Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, June 06, 2011 9:42:22 AM

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH EUGENE WALTERS, SR., | ) | Case No. 10-1356 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| SANDRA M. DONHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-93 |
| | ) | |
| KENNETH EUGENE WALTERS, SR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Sandra M. Donham seeks summary judgment on her adversary complaint to except a monetary, state court judgment from the anticipated Chapter 13 discharge of Kenneth Eugene Walters, Sr. (the "Debtor"), pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6), based on the application of res judicata.

The court will sua sponte dismiss Ms. Donham's cause of action under § 523(a)(6),[1] and, for

---

[1] The Debtor filed a Chapter 13 case. Debts of the type described in 11 U.S.C. § 523(a)(6) (for willful and malicious injury) are not excepted from a Chapter 13 discharge received on the completion of plan payments. § 1328(a)(2). Debts for "restitution or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual" are excepted from a Chapter 13 discharge under § 1328(a)(4), but this cause of action has not been pled by Ms. Donham. Although it is possible that the Debtor may seek a hardship discharge under § 1328(b), which would make § 523(a)(6)

the reasons stated herein, deny entry of summary judgment on her causes of action under §§ 523(a)(2)(A) and (4).

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

The Debtor and Ms. Donham, brother and sister, were co-attorneys in fact for their mother, Verda I. McCombs, who died on October 6, 2006. The Debtor was also executor of her death estate. On May 28, 2008, Ms. Donham filed an amended complaint in the Circuit Court of Marion County,

---

applicable to this Chapter 13 case, no such hardship discharge is contemplated at this time, and under Fed. R. Bankr. P. 4007(d), Ms. Donham would have 30 days notice to file a complaint under 11 U.S.C. § 523(a)(6) in the event the Debtor should request hardship discharge. Thus, the court will sua sponte dismiss Ms. Donham's cause of action under § 523(a)(6).

-2-

West Virginia, alleging that the Debtor mismanaged the assets of Ms. McCombs, liquidated her assets without a valid reason, converted her assets to his own use, violated his fiduciary duties, failed to provide an accounting, and failed to fully repay loans made to him by Ms. McCombs. Ms. Donham requested an accounting, the repayment of $72,365.86 in loans made by Ms. McCombs to the Debtor,[2] punitive damages as a result of the Debtor's breach of his fiduciary duties, costs, expenses, and attorney's fees.

On January 14, 2009, the Circuit Court of Marion County held a jury trial on Ms. Donham's amended complaint. On February 2, 2009, the court entered its Judgment Order reciting that, after the issues were tried and the Court instructed the jury on the applicable law, the jury rendered a verdict for Ms. Donham in the amount of $100,000, comprised of $85,000 in compensatory damages and $15,000 in punitive damages. No specific findings or explanation accompanied the jury verdict, and the verdict did not separate the Debtor's liability based on his actions individually, as attorney in fact for Ms. McCombs, or as executor of Ms. McCombs's estate.[3]

### III. DISCUSSION

Ms. Donham contends that the general jury verdict awarding her damages is res judicata regarding all issues of material fact regarding her claim under 11 U.S.C. § 523(a)(2)(A) that the Debtor obtained money, property or services by false pretenses, false representation, or actual fraud, and to her claim under § 523(a)(4) that the Debtor committed fraud or defalcation while acting in a fiduciary capacity.

The "[p]reclusion doctrine encompasses two strands: res judicata and collateral estoppel. Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). Collateral estoppel or issue preclusion, in contrast, bars litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment. *Taylor v.*

---

[2] Ms. Donham's demand was for repayment of $36,182.93, which represented one-half of the amount of the alleged loans.

[3] On June 29, 2010, the Debtor filed his Chapter 13 bankruptcy case. In his proposed Chapter 13 plan, the Debtor proposes to sell several parcels of real property and use the proceeds to pay the full amount of Ms. Donham's judgment lien. As of March 2011, the Debtor had sold some of that property and has distributed $45,594.67 in sale proceeds to Ms. Donham.

-3-

*Sturgell*, 553 U.S. 880, 892 (2008).

In Ms. Donham's motion for summary judgment she argues that her state court judgment is "res judicata on all issues of material fact"; thus, the motion is unclear as to whether she is asserting claim or issue preclusion. As stated by *Taylor*, however, in a broad sense, the term "res judicata" can encompass both doctrines. *Id.* ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). The court will therefore address Ms. Donham's motion for summary judgment under both preclusion doctrines.

### A.   Claim Preclusion

Ms. Donham contends that the judgment entered on the causes of action alleged in her Marion County amended complaint conclusively establishes her entitlement to summary judgment on her bankruptcy causes of action under 11 U.S.C. §§ 523(a)(2)(A) and (4).

The Full Faith and Credit Act, 28 U.S.C. § 1738, "requires federal courts to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citation omitted); *see also Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006) (same). Before a West Virginia court gives preclusive effect to claims adjudicated by another court, three elements must be satisfied:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syllabus Pt. 4, *Blake v. Charleston Area Med. Ctr.*, 498 S.E.2d 41 (W. Va. 1997)*; see also Porter v. McPherson*, 479 S.E.2d 668, 676 (W. Va. 1996) ("'Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.'") (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

Here, the two causes of action alleged by Ms. Donham under 11 U.S.C. §§ 523(a)(2)(A) and (4) to except debts from a bankruptcy discharge were not pled in her amended complaint in the Circuit Court of Marion County. Indeed, causes of action to except debts from a bankruptcy

discharge cannot be pled until a debtor files a bankruptcy case. The Debtor did not file bankruptcy until after the Marion County jury rendered its verdict.

Consequently, the doctrine of claim preclusion does not apply to Ms. Donham's adversary complaint to except her Marion County judgment from the Debtor's anticipated discharge under 11 U.S.C. §§ 523(a)(2)(A) or (4). *See, e.g.*, *Brown v. Felsen*, 442 U.S. 127, 138 (1979) ("[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt."); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 23 (4th Cir. 1997) ("Pahlavi's claim in the bankruptcy court – that Ansari's debt to him is nondischargeable – is certainly different from Pahlavi's claim in state court – that Ansari defrauded Pahlavi and breached fiduciary duties owed to Pahlavi."); *Ngo v. Webb (In re Webb)*, 08-743, 2009 Bankr. LEXIS 591 at *7 (Bankr. N.D.W. Va. March 31, 2009) (stating that "[s]tate-court judgments do not have claim preclusive effects in the context of a § 523 action.").

**B.      Issue Preclusion**

Ms. Donham asserts that the general verdict rendered by the Marion County jury on her amended complaint conclusively establishes all issues of material fact necessary to grant her relief from the Debtor's discharge under 11 U.S.C. §§ 523(a)(2)(A) or (4).

Issue preclusion "is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Syllabus Pt. 2, *Conley v. Spillers*, 301 S.E.2d 216 (W. Va. 1983). Like claim preclusion, issue preclusion also requires "that the first judgment be rendered on the merits and be a final judgment by a court having competent jurisdiction over the subject matter and the parties." *Id.* at Syllabus Pt. 3. More specifically, an issue is precluded from relitigation when: "(1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Syllabus Pt. 1, *State v. Miller*, 459 S.E.2d 114 (W. Va. 1995); *see also Wilson v. Wilson (In re Wilson)*, Nos. 06-5, 06-34, 2007 Bankr. LEXIS 1866 at *10 (Bankr. N.D.W. Va. June 6, 2007) (same).

Here, a final adjudication exists as to the merits of Ms. Donham's Marion County action, the

−5−

Debtor was the party defendant in that action, and the Debtor had a full and fair opportunity to litigate the merits of Ms. Donham's amended complaint in the Marion County action inasmuch as he was able, by counsel, to defend Ms. Donham's cause of action before a jury trial on the merits of Ms. Donham's amended complaint. Thus, the only factor remaining is whether any of the issues previously decided by the jury in the Marion County action are identical to the issues presented in Ms. Donham's complaint to except the amount of the Marion County judgment from the Debtor's discharge.

### 1. Section 523(a)(2)(A) – False Pretenses, False Representations or Actual Fraud

Ms. Donham states that the Marion County judgement conclusively establishes that: (1) the Debtor obtained money and property from his mother by diverting assets to himself while acting in a fiduciary capacity; (2) the Debtor made misleading, misrepresenting and false statements to Ms. Donham to prevent her from exercising her powers as co-attorney in fact; (3) the Debtor never complied with Ms. Donham's request for an accounting until after she sued him in Marion County; and (4) the Marion County jury heard the evidence, was instructed as to the applicable law, and rendered a verdict against the Debtor.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money . . . to the extent obtained, by – (A) false pretenses, a false representation, or actual fraud . . . ." Not all debts incurred as a result of fraud fall within this exception to discharge; rather, this exception only includes those "debts in which the debtor used fraudulent means to obtain money . . . ." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007). However, "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge," *id.* at 222 (citing *Cohen v. De La Cruz*, 523 U.S. 213, 218, (1998)), "including . . . attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen*, 523 U.S. at 223. The intent of § 523(a)(2) is "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Rountree*, 478 F.3d at 219-20.

For purposes of making a non-dischargeability determination, the terms "false pretenses," "false representation," and "actual fraud" are to be interpreted according to the common understanding of those terms at the time § 523(a)(2)(A) was enacted. *E.g.*, *Field v. Mans*, 516 U.S. 59, 69 (1995) ("The operative terms in § 523(a)(2)(A) . . . carry the acquired meaning of terms of

−6−

art. They are common-law terms, and . . . they imply elements that the common law has defined them to include."). What Congress meant when it used the terms can be derived from the generally shared common law, as set forth in *Restatement (Second) of Torts* (1976), which was published shortly before Congress passed the 1978 Bankruptcy Code. *Field*, 516 U.S. at 70-73. *See also Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999) ("[W]e will follow the Supreme Court's lead and look to the Restatement to determine the elements required to prove that claim."). To define "actual fraud" the Supreme Court looked to the definition of "fraudulent misrepresentation" under the Restatement, which defines the tort as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention, or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts* § 525 (1976).

Thus, under the Restatement, "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Biondo*, 180 F.3d at 134. Regarding a debtor's misstatement of intention, it is only "fraudulent if he does not have that intention at the time he makes the representation." *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting *Restatement (Second) of Torts* § 530(1) (1976)).

In this case, no specific findings of fact or conclusions of law were entered by the Circuit Court of Marion County; rather, the jury entered a verdict in favor of Ms. Donham on her amended complaint. The causes of action alleged in the amended complaint were not specifically enumerated, but the amended complaint contained allegations that the Debtor: mismanaged the funds of Ms. McCombs, liquidated her assets without reason, converted her property, violated his fiduciary duties, failed to provide Ms. Donham with an accounting, and did not fully repay loans.

Ms. Donham also included portions from a transcript of a hearing before the Circuit Court of Marion County. In the transcript, the Debtor testified about a 1997 loan for $25,000, stating that he remembered paying Ms. McCombs back for several months, and then Ms. McCombs told him that he need not bother because he took care of her all the time. For a $30,000 loan made in 2000, the loan's duration was until such time as the Debtor could sell a home he was building. The Debtor

–7–

stated that he did not remember the home he was working on in 2000 and did not keep any records of the loan. For a $9,000 loan made in 1986, the Debtor stated that Ms. McCombs later told him that he did not need to pay her back.

Importantly, the Marion County amended complaint did not contain any allegation that the Debtor made a fraudulent misrepresentation, and no similar finding was made by the jury. The mismanagement of Ms. McCombs funds, the liquidation of her assets without reason, the conversion of her property, the violation of the Debtor's fiduciary duties, the failure to provide Ms. Donham with an accounting, and the non-repayment of loans could all be accomplished without the Debtor fraudulently misrepresenting his intention at the time he undertook the wrongful acts. Moreover, no indication exists in the record on summary judgment regarding Ms. McCombs or Ms. Donham's justifiable reliance on the purported fraudulent misrepresentations of the Debtor.

Accordingly, based on the record on summary judgment, the court cannot conclude that the Marion County judgment conclusively establishes that the Debtor made a fraudulent misrepresentation that induced either Ms. McCombs or Ms. Donham to act or refrain from acting, that caused harm to Ms. McCombs or Ms. Donham, or that Ms. McCombs or Ms. Donham justifiably relied on the alleged fraudulent misrepresentation.

### 2. Section 523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity

Ms. Donham asserts that the Debtor was acting in a fiduciary capacity as an attorney in fact for Ms. McCombs and executor of Ms. McCombs's estate, and that his mismanagement of Ms. McCombs's funds, liquidation of her assets without reason, conversion of her property, violation of his fiduciary duties, failure to provide Ms. Donham with an accounting, and failure to fully repay loans constitutes multiple defalcations.

Section 523(a)(4) excepts debts from discharge that arise out of "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). In *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), the court defined the tort of defalcation:

> Defalcation is "the failure to meet an obligation" or "a nonfraudulent default." To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of . . . 'embezzlement' or even 'misappropriation.'" Thus, negligence or even an innocent mistake which results in misappropriation or failure to account is sufficient.

*Id.* at 811; *see also Pahlavi*, 113 F.3d at 20 ("[A] 'defalcation' for purposes of this statute does not

-8-

have to rise to the level of 'fraud' 'embezzlement,' or even 'misappropriation.'") (citation omitted).

Here, taking the allegations in Ms. Donham's amended complaint as true, the Debtor mismanaged the funds of Ms. McCombs, liquidated her assets without reason, converted her property, violated his fiduciary duties, failed to provide Ms. Donham with an accounting, and did not fully repay loans. Thus, a sufficient basis exists, based on the jury's verdict for Ms. Donham, that a defalcation has occurred within the meaning of 11 U.S.C. § 523(a)(4). The only issue left for determination is whether that defalcation occurred while the Debtor was acting in a fiduciary capacity of the type contemplated by § 523(a)(4).

The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Under federal common law, the term "fiduciary" includes trustees of express or technical trusts. *Id.* In an express or technical trust, "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds . . . ." *Id.* at *8.

Although the definition of "fiduciary" is controlled by federal common law, "'the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4).'" *Centra Bank, Inc. v. Burton (In re Burton)*, 416 B.R. 539, 543 (Bankr. N.D.W. Va. 2009) (quoting 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). Thus, certain state law fiduciary relationships exist that are determined to be so special that they fall within the meaning of "fiduciary" in § 523(a)(4) despite the absence of an express trust or other actual, preexisting notice to the debtor that he is holding property in trust for another. *Id.* These relationships have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi*, 113 F.3d 17, real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), a corporate officer and director mishandling corporate funds, *Burton*, 416 B.R. at 546, and those acting under a power

-9-

of attorney to an incompetent person, *Ostrum v. Porter*, No. 03-118, 2008 Bankr. LEXIS 109 (Bankr. N.D.W. Va. Jan. 10, 2008). As stated in *Hamby*, 217 F.2d at 80, the term fiduciary in § 523(a)(4) encompasses those in a common law fiduciary relationship that have been entrusted with funds such that the relationship between the parties is more than merely debtor-creditor.

Particularly, in *Ostrum*, 2008 Bankr. LEXIS 109, this court defined the time at which a person holding a power of attorney over another will be deemed a fiduciary for purposes of 11 U.S.C. § 523(a)(4). The court held that a fiduciary relationship under § 523(a)(4) is "created when there is a "'difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter.'" *Id.* at *11 (citation omitted).

> In this case, the Plaintiffs assert that the Debtor was acting in a fiduciary capacity to Mabel because he was exercising his rights under the [power of attorney]. Under Maryland law, a power of attorney is a "written document by which one party, as principal appoints another as agent (attorney in fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal."[4] . . . Maryland State courts have described the relationship under a power of attorney as one that encompasses obligations of confidentiality, loyalty, and fiduciary duties.[5]
>
> Notably, under Maryland law, a power of attorney granted in favor of another may be revoked at anytime.[6] Here, no evidence suggests that Mabel was incompetent to handle her own affairs before June 1995; thus, Mabel was competent to monitor the actions of the Debtor before that time and object if she thought the Debtor was acting improperly. Although Mabel signed the [power of attorney] in May 9, 1994, the Debtor stated that he never exercised rights given to him by the [power of attorney] until June 1995. No evidence suggests that Mabel was unaware of the

---

[4] West Virginia law does not materially differ from the law of Maryland regarding a power of attorney. *See In re Richard P.*, No. 34751, 2010 W. Va. LEXIS 87 at *24 (W. Va. July 9, 2010) (stating that a "power of attorney" is "'an instrument granting someone authority to act as agent or attorney-in-fact for the grantor.'" (quoting *Blacks Law Dictionary* 1290 (9th ed. 2009)); *see also* W. Va. Code § 39-4-1 et seq. (uniform durable power of attorney).

[5] *Napier v. Compton*, 558 S.E.2d 593 (W. Va. 2001) ("'A power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent.'") (citation omitted).

[6] *Frazier v. Steel & Tube Co.*, 132 S.E. 723, 724 (W. Va. 1926) ("'It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time . . . .'") (citation omitted).

transactions that the Debtor engaged in relating to her financial affairs before this date.  Consequently, no basis exists in this case to find that the Debtor was acting in a "fiduciary capacity" to Mabel before June 1995, and no transaction that occurred before this time is subject to a § 524(a)(4) cause of action.

However, by the Debtor's own admission, in June 1995, Mabel was no longer able to care for herself on a daily basis, and the Debtor began exercising his rights under the [power of attorney] to manage Mabel's financial affairs on the basis that Mabel had become incompetent to perform those tasks herself. Consequently, the Debtor enjoyed a position of ascendancy over Mabel, who had, under the power of attorney, reposed a special confidence in the Debtor over her financial affairs. The Debtor was in this position of ascendency from June 1995, to the appointment of his replacement in April 1996. Accordingly, the Plaintiffs have carried both their burden of proof and persuasion that the Debtor acted in a fiduciary capacity – as a matter of federal law – to Mabel from June 1995 to April 1996. Transactions engaged in by the Debtor during this period of time are subject to scrutiny under § 523(a)(4).

*Id.* at *12-16.

In this case, Ms. McCombs made the Debtor her attorney in fact in 1993.  In her summary judgment motion and accompanying exhibits, Ms. Donham has failed to demonstrated that Ms. McCombs was incompetent in 1993, or at anytime thereafter, such that the Debtor occupied a position of ascendancy over her, and thereby creating a fiduciary relationship of the type contemplated by 11 U.S.C. § 523(a)(4).

Ms. Donham also asserts that the Debtor exercised fiduciary duties as executor of Ms. McCombs estate.  West Virginia recognizes that executors are fiduciaries.  *E.g.*, Syllabus Pt. 4, *In re Estate of Lapinsky v. Sparacino*, 148 W. Va. 38, 132 S.E.2d 765 (1963) ("An executor or administrator of the estate of a deceased person is under a duty to take custody of the estate and to administer it in such a manner as to preserve and protect it for ultimate distribution. In the discharge of such duty, he is held to the highest degree of good faith; and is required to exercise that degree of care and diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs."); *see also Dillon v. Dillon*, 362 S.E.2d 759, 761-62 (W. Va. 1987) (holding that a fiduciary or confidential relationship existed based on a person's status as an executor of an estate).  Likewise, under federal common law, executors are the type of fiduciaries that § 523(a)(4) was meant to include inasmuch as an executor is akin to a trustee of an express trust. *E.g.*, *Shephard v. O'Quinn (In re O'Quinn)*, 374 B.R. 171, 179 (Bankr. M.D.N.C. 2007) ("'The term 'fiduciary' as

-11-

used in section 523(a)(4) is restricted to 'the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers . . . .'") (citation omitted).

Although Ms. McCombs died on October 6, 2006, the record on summary judgment does not demonstrate what acts, if any, Debtor is alleged to have undertaken as executor after October 6, 2006 that constitute a defalcation. Consequently, Ms. Donham has not demonstrated that summary judgment is appropriate on her § 523(a)(4) cause of action.

## IV. CONCLUSION

For the above stated reasons, the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that dismisses Ms. Donham's cause of action under 11 U.S.C. § 523(a)(6), and that denies her motion for summary judgment.